**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**
**CIVIL ACTION NO. 5:06CV-P186-R**

**MARK A. PRICE**                                                                                     **PLAINTIFF**

**v.**

**JOHN D. REES** *et al.*                                                                **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff filed this civil rights action under 42 U.S.C. § 1983 (DN 1). The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court will dismiss a portion of Plaintiff's claims, but will allow Plaintiff's Eighth Amendment deprivation of exercise and exposure to second-hand smoke claims to proceed against Defendants in their individual capacities and in their official capacities for injunctive relief.

### I. SUMMARY OF CLAIMS

Plaintiff is a convicted inmate currently incarcerated at the Kentucky State Penitentiary ("KSP") in Eddyville, Kentucky. Plaintiff has filed the instant action against John D. Rees, Commissioner of the Kentucky Department of Corrections; Thomas L. Simpson, KSP Warden; Richard Pershing, KSP Deputy Warden; Nancy Doom, KSP Deputy Warden; and Joel L. Dunlap, KSP Unit Administrator. All of the Defendants are sued in both their individual and official capacities. Plaintiff alleges that he suffered numerous constitutional violations by these Defendants.[1] Plaintiff is seeking either: (1) a settlement of $400,000.00; or (2) $200,000.00 in compensatory damages, $200,000.00 in punitive damages, transfer to another facility, and a

---

[1] The Court will address the specifics of Plaintiff's claims in the analysis section of this memorandum.

jury trial.

## II.  STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A ; *McGore*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true.  *Prater v. City of Burnside, Ky.,* 289 F.3d 417, 424 (6th Cir. 2002).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted, "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000).

While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364 (1982), a plaintiff is required to plead more than bare legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  Therefore, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under

2

some viable legal theory. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

## III.  ANALYSIS

**A.     Official Capacity Damages Claims**

Plaintiff's official capacity claims for damages will be dismissed on two bases. First, Defendants, as state officials and employees sued in their official capacities for damages, are absolutely immune from liability under the Eleventh Amendment to the United States Constitution. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."). Second, Defendants are not "persons" subject to suit within the meaning of § 1983 when sued in their official capacities for monetary damages. *Will*, 491 U.S. at 71 (concluding that a state, its agencies, and its officials sued in their official capacities for monetary damages are not considered persons for the purpose of a § 1983 claim); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (same). Consequently, Plaintiff's official capacity claims for damages against Defendants must be dismissed.

**B.     Lack of Recreation**

Plaintiff alleges that he has been confined to administrative segregation since March 2006, and that during this time he has received almost no recreation time outside of his cell. Specifically, Plaintiff claims that Defendants have cited him for a number of minor infractions as a pretext for refusing him recreation time. The Sixth Circuit, applying Supreme Court precedent, has recognized that outdoor recreation, in some undefined form and amount, is

necessary for inmates' well-being. *See Walker v. Mintzes*, 771 F.2d 920, 927 (6th Cir. 1985). Moreover, it is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without peneological justification, violates Eighth Amendment guarantees. Accordingly, the Court will allow this claim to proceed for further development.

### C.     Change in Visitation Privileges

Plaintiff alleges that on or about May 15, 2006, while in the segregation unit he met with the adjustment committee on a prison rule violation (arranging for the smuggling of contraband into the prison) and was sentenced to 90 days disciplinary segregation. Shortly after the adjustment committee hearing, Plaintiff states that he received a memorandum from Defendant Pershing advising him that his visiting privileges were being restricted to non-contact. Plaintiff claims this adjustment violates his Due Process rights because his privileges were not revoked during the course of the adjustment committee hearing, and also constitutes cruel and unusual punishment under the Eighth Amendment.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law. "Those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209 (2005). In evaluating a claimed liberty interest by prison inmates, courts are mindful that imprisonment necessarily "carries with it the circumscription or loss of many significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524 (1984). The "curtailment of certain rights is necessary, as a practical matter, to accommodate a myriad of 'institutional needs and objectives' of prison facilities, chief among which is internal security." *Id.* at 524 (internal citations omitted). Accordingly, not every "action taken for a punitive reason encroaches upon a liberty interest under the Due

4

Process Clause." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "the mere fact of discipline or the imposition of sanctions in prison does not automatically trigger due process protections." *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995).

While prisoners do not lose all rights to associate while incarcerated, the United States Supreme Court recognizes that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior, especially for high-security prisoners who have few other privileges to lose." *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) (holding that imposing a restriction on visitation for inmates with substance abuse violations for a period of two years did not violate due process because it served the legitimate goal of deterring the use of drugs and alcohol within the prison.).

Here, Plaintiff was convicted of attempting to smuggle contraband into the prison. As such, the limitations placed on his visitation privileges were reasonable in light of the prison's need to keep contraband out of its population. Plaintiff is still allowed visitors; he simply cannot come into physical contact with them. Furthermore, the restriction is only mandatory for one year, after which time, Plaintiff can request normal visitation privileges be reinstated. In light of *Overton*, the Court cannot find that Plaintiff has stated a cognizable due process claim for the loss of "contact" visits.

Additionally, in *Overton* the Supreme Court explained why the loss of visiting privileges in circumstances similar to Plaintiff's does not violate the Eighth Amendment:

> Respondents also claim that the restriction on visitation for inmates with two substance-abuse violations is a cruel and unusual condition of confinement in violation of the Eighth Amendment. The restriction undoubtedly makes the prisoner's confinement more difficult to bear. But it does not, in the circumstances of this case, fall below the standards mandated by the Eighth Amendment. Much of what we have said already about the withdrawal of privileges that incarceration

> is expected to bring applies here as well. Michigan, like many other States, uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline. This is not a dramatic departure from accepted standards for conditions of confinement. *Cf. Sandin v. Conner*, 515 U.S. 472, 485 (1995). Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Rhodes v. Chapman*, 452 U.S. 337 (1981). If the withdrawal of all visitation privileges were permanent or for a much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations.

*Id.* at 136-37.

Accordingly, the Court finds that Plaintiff has failed to state a claim for the modification in his visiting privileges.

**D.      Administrative Control Unit Claim**

Plaintiff states that on May 30, 2006, he had served out his time in disciplinary segregation for the contraband violations and met with the prison classification committee. As a result, Plaintiff states that he was placed on the Prisoner Administrative Control Unit ("PACU"), which is part of the Segregation Unit. Plaintiff alleges that he was told that this assignment was a form of "alternative housing and not for punishment." However, Plaintiff alleges that "since being housed on the Prisoner Administrative Unit, I have come to the realization that KSP officials are using [it] just as additional punishment placement." Plaintiff claims that this is a clear violation of his Fourteenth Amendment rights because his classification in the PACU prevents him from being able to participate in rehabilitative programs.

A prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification. *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir.

2005).  Likewise, Prisoners do not have a constitutional right to participate in particular rehabilitative programs.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (explaining that prisoner classification and eligibility for rehabilitation programs are not subject to constitutional protections); *Griffin v. Kallen*, 791 F.2d 933 (6th Cir. 1986) ("[P]risoner has no constitutional entitlement to a particular classification or to any particular eligibility for rehabilitative programs.").  Accordingly, the Court must dismiss Plaintiff's claims regarding his classification in the PACU.

**E.     Exposure to Second-Hand Smoke**

Plaintiff alleges that on or about May 30, 2006, after he had been in the segregation unit for a little over two months he began to suffer from migraine headaches and shortness of breath.  Plaintiff states that although inmates are prohibited from smoking in this cell block, staff are permitted to do so (a fact confirmed by the prison's response to Plaintiff's grievances),[2] and that the ventilation system in administrative segregation is designed in such a way that all of the second hand smoke from the staff is pulled into the inmates' cells.  Plaintiff maintains that knowingly exposing Plaintiff and other inmates to this second-hand smoke violates the constitutional right to be free from cruel and unusual punishment.  The harmful effects of second-hand smoke are well-documented, and the Sixth Circuit has held that under certain circumstances inmates exposed to second-hand smoke may maintain Eighth Amendment claims.  *See Taylor v. Boot*, 58 Fed. Appx. 125, 126-27 (6th Cir. 2003) ("In the

---

[2]Although most state building are now smoke-free, staff are apparently allowed to smoke in KSP.  *See* Sept. 15, 2006, letter from Commissioner Rees to Mark Price ("[T]he Kentucky State Penitentiary is not required to be smoke free under HB55. . . . Staff may smoke in designated areas.  If you do not like the rules in segregation, I suggest you work your way out by good behavior.").

7

context of an inmate's 'second-hand smoke' claim, the plaintiff must establish that he has a serious medical need for a smoke-free environment, or that, regardless of health, the level of environmental tobacco smoke in the prison creates an unreasonable risk of serious damage to his future health."). Accordingly, the Court will allow this claim to proceed for further development.

### F. Processed Food Claim

Finally, Plaintiff alleges that while in segregation, his only food source comes from the prison. Plaintiff claims that the meals served by the prison "are 90% processed" food and that "it has been brought to [his] attention, that a long termed intake of these foods, will cause a serious risk to ones health." As such, Plaintiff claims that his constitutional rights have been violated by being provided with this low quality food as his only source of nutrition.

Unlike Plaintiff's second-hand smoke claim, he has not alleged that the food is presently causing him any ill side effects (high blood pressure, cholesterol, weight gain etc.). Unless a person has experienced an actual injury, as opposed to a speculative claim of injury, the person is without standing to assert a civil rights claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State*, 454 U.S. 464, 471 (1982); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487 (6th Cir. 1995). Accordingly, the Court will dismiss this claim.

The Court will enter Orders consistent with this Memorandum Opinion.

Date:

cc:	Plaintiff, *pro se*
	Defendants
	Kentucky Justice & Public Safety Cabinet, Office of Legal Services
4413.008